**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| ANNIE F. HUNT, | ) | NO. CV 05-6097-SS |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

Plaintiff filed a Complaint on August 19, 2005, seeking review of Defendant's decision denying her disability benefits. On September 2, 2005, the parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' Joint Stipulation, filed on July 27, 2006, in compliance with the Case Management Order issued on September 9, 2005. For the reasons stated below, this Court finds that the decision of the Commissioner is not based upon substantial evidence, and the matter is REVERSED AND REMANDED for further proceedings.

**PROCEDURAL HISTORY**

On April 20, 2001, Plaintiff, then a fifty-one year-old former mail carrier, in-home care-giver, department store scanner, and Housing Authority liaison assistant, protectively filed an application for Supplemental Security Income disability benefits under Title XVI of the Social Security Act.[1] (Administrative Record ("AR") 55-58, 59, 60, 253). Plaintiff alleged that her disability began on May 15, 2000.  (AR 55). She indicated that she was unable to work because of uncontrollable hypertension, heart murmur, dizziness, and occasional anxiety and stress.  (AR 64).  Plaintiff stated that she could not stand for very long or stay in warm or hot places.  (Id.).  She also stated that she suffered from stomach pain, musculoskeletal pain, headaches, and various other conditions. (AR 91).

The Social Security Administration (the "Agency" or "Commissioner") denied Plaintiff's claim on September 14, 2001, finding that Plaintiff's condition was not severe enough to keep her from working.  (AR 43-46). On reconsideration, the Agency affirmed its prior decision.  (AR 49-52). Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (AR 53-54).

A hearing before ALJ Richard Leopold was conducted on July 20, 2002, at which Plaintiff appeared with a non-attorney representative and testified.  (AR 233-44, 246-47).  A vocational expert also testified.

---

[1]     Title XVI of the Social Security Act is codified at 42 U.S.C. §§ 1381-85.

(AR 244-46).   On November 20, 2002, ALJ Leopold issued a decision denying benefits.   (AR 309-13).   Plaintiff sought review of this decision before the Appeals Council (AR 5-6), which was denied  (AR 3-4), following which she sought judicial review in Case No. CV 03-2753. On March 19, 2004, the matter was remanded by this Court for further development of the record regarding Plaintiff's past jobs.[2]  (See AR 252-53, 283-84).   Pursuant to the remand order, a second hearing was held before ALJ Leopold on December 6, 2004,[3] at which Plaintiff again appeared, with counsel, and testified.   (AR 718-32).   A different vocational expert was also present and testified.   (AR 732-47).   ALJ Leopold again denied benefits by decision dated June 8, 2005  (AR 252-59), making his decision the final decision of the Agency.   20 C.F.R. § 416.1484.   Plaintiff filed the instant Complaint.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate  a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[4] and that is expected to result in death or to last for a continuous period of at least twelve months.   Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).   The impairment must render the claimant

---

[2]   This Court takes judicial notice of the Memorandum Decision and Order in CV 03-2753.

[3]   In the meantime, Plaintiff filed a second application for benefits in 2003.   (AR 257, 717-18).

[4]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done or intended to be done for pay or profit.   20 C.F.R. § 416.910.

3

incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. § 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

<u>Tackett</u>, 180 F.3d at 1098-99; <u>see also</u> <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing <u>Tackett</u>); 20 C.F.R. §§ 416.920(b) - 416.920(f)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. <u>Bustamante</u>, 262 F.3d at 953-54 (citing <u>Tackett</u>). Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. <u>Id.</u> at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity,[5] age, education, and work experience. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing <u>Tackett</u>). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## THE ALJ'S DECISION

Following the five-step sequential evaluation procedure, the ALJ found that Plaintiff had not engaged in substantial gainful activity

---

[5] "[R]esidual functional capacity is the most [an individual] can still do despite [her] limitations," and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a).

5

since the alleged onset of disability. Plaintiff suffered from essential hypertension, elevated cholesterol and affective disorder which were "severe," but these impairments did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ found that Plaintiff's allegations regarding her limitations were not credible and that she retained the residual functional capacity to perform sedentary work. He found that Plaintiff's past relevant work as a case aide did not require the performance of work-related activities precluded by her residual functional capacity and that, therefore, Plaintiff's impairments did not prevent her from performing her past relevant work. Accordingly, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act at any time through the date of his decision. (AR 258).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a

reasonable person might accept as adequate to support a conclusion." <u>Id.</u> (citing <u>Jamerson</u>, 112 F.3d at 1066; <u>Smolen</u>, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (citing <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21 (citing <u>Flaten v. Sec'y</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**DISCUSSION**

Plaintiff worked for the Housing Authority for approximately thirteen months.[6] (AR 731). Her job title was "liaison assistant" (AR 65), but according to the vocational expert, the DOT[7] classification of the job was that of "case aide, which is DOT 195.367-010, light exertional range,[8] semi-skilled[9] and an SVP of three."[10] (AR 734).

---

[6] Plaintiff's testimony concerning the dates and length of employment is inconsistent. (AR 729-30; compare AR 60, 65, 99).

[7] Dictionary of Occupational Titles. "The DOT is 'the Secretary's primary source of reliable job information.'" <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 n. 6 (9th Cir. 1995), <u>quoting</u> <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1276 (9th Cir. 1980).

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

[9] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. . . ." 20 C.F.R. §

7

Plaintiff does not contest the correctness of "case aide" as being the proper DOT classification of her job as "housing liaison assistant."

Plaintiff essentially testified that she performed this job fifty per cent of the time out in the field and fifty per cent of the time in the office.[11] (AR 728). The VE, "based on [Plaintiff's] description . . . kind of a 50/50 breakdown of in the office and going out and looking at perspective [sic], housing," testified that "light is the appropriate classification." (AR 735). However, the ALJ found that Plaintiff was limited to sedentary work.[12]

---

416.968(b).

[10] "'SVP' stands for 'specific vocational preparation' and is defined in the U.S. Department of Labor's Dictionary of Occupational Titles (4th ed. 1991) at 1009 as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation....It does not include the orientation time required of a fully qualified worker to become accustomed to the special conditions of any new job.' An SVP of 3 means that specific vocational preparation of over one month and up to and including three months is required. Id." Khuu v. Chater, 12 F.Supp.2d 1028, 1030 n.4 (C.D. Cal. 1997).

Using the skill level definitions in 20 CFR 416.968, "semi-skilled work corresponds to an SVP of 3-4." Social Security Ruling ("SSR") 00-4p.

[11] Plaintiff testified that she spent about two and one-half hours in the office on the phone and the rest of the time out in the field. (AR 727-28). When asked whether she spent five hours a day in the field, she testified that she did not. (AR 728). This was a part-time job. She apparently performed this job in the morning and had to go to her other job, although the testimony is not very clear. (Id.). In her Disability Report, Plaintiff reported that she worked six hours a day as a housing liaison assistant. (AR 65).

[12] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if

Based upon the DOT, vocational expert testimony, and upon the ALJ's finding that Plaintiff is limited to sedentary work, Plaintiff argues that she is unable to perform her past relevant work either as she performed it or as generally performed. She further argues that she is entitled to a reversal for benefits because there do not "exist significant numbers of occupations which she can perform at the sedentary level utilizing any learned skills." (JS 8).

The sole issue, therefore, is whether the ALJ's finding that Plaintiff is able to perform her past relevant work of case aide is consistent with his finding that Plaintiff is limited to sedentary work.

Although the ALJ did not explicitly so state, he appears to have found that Plaintiff was incapable of returning to her past job as she performed it, but capable of performing the job as it is generally performed in the national economy. (AR at 258). Even assuming that Plaintiff is unable to perform her past relevant job as performed, this does not end the step four inquiry. She must also demonstrate that she is "unable to perform "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001), citing SSR 82-61; see 20 C.F.R. § 416.960(b)(2).

Plaintiff's contention that she is unable to perform the job of case aide as generally performed because the job is classified as light

---

walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a). "Occasionally" is defined as "occurring from very little up to one-third of the time." See SSR 96-9p, 85-15.

and she is limited to sedentary work calls for an assumption that the DOT's characterization is controlling.  It is not.

In determining whether an individual can return to her past relevant work, "the best source for how a job is generally performed is usually the Dictionary of Occupational Titles." Pinto, 249 F.3d at 845-46.  This does not mean, however, that the DOT is dispositive (Id., at 846; Johnson v. Shalala, 60 F.3d 1428, 1435 n.7 (9th Cir. 1995), and "a vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy" (20 C.F.R. § 416.960(b)(2)).  Ultimately, however, it is the ALJ who is charged with the responsibility of making the step four determination. Pinto, 249 F.3d at 847 (citing Winfrey v. Chater, 92 F.3d 1017, 1025 (10th Cir. 1996)).

Here, rather than relying upon the DOT, the ALJ purportedly relied upon vocational expert testimony.  The VE was asked her "opinion as to whether a person could perform any of their past relevant work as identified either as it was actually done or as it is generally required to be done by employers in the national economy." Although the VE answered that she did not believe that Plaintiff would be capable of performing "any of the past relevant work" (AR 735), the VE's response is clearly limited to Plaintiff's past relevant work as she performed it for the housing agency, with a particular emphasis on the need to climb

stairs.[13]    (AR 736; see AR 255).    When the ALJ asked whether there would be "any other work a person could perform with these limitations," the VE answered that "there would be other case aide work for other agencies that could be performed.    It would just be the housing that could not be performed."    (AR at 736-7).    The VE further testified, however, that the DOT code would be the same for current jobs in the national and regional economy as it was for Plaintiff's past position.    (AR 737).

    The ALJ then inquired whether with a limitation to sedentary work, Plaintiff possessed any transferable skills to other jobs.    The VE testified that "[t]here are skills.    You know, there are obviously the basic skills of dealing with the clients, the communication skills, the ability to act as a liaison, to-you know, as she assessed the housing facility, she had to make certain judgments."    The VE went on to "say that some of these aides do work more at a sedentary level; however, the DOT codes always put them at light."    (AR 738).

    The ALJ interpreted this testimony to mean that "at the sedentary level, such claimant could work as a case aide at a desk-type occupation for another agency, e.g., as case aide for any agency dealing with community health issues, and utilizing the transferable skills of

---

    [13]    The hypothetical question to which the VE responded called for the ability to perform light work, with only occasional balancing and kneeling.    Crawling, stooping, crouching and climbing were precluded in this hypothetical.    (AR 735).    In his decision on remand, the ALJ did not specifically include any climbing restrictions, but noted that he also modified his hypothetical "to define a claimant with the same medical-vocational factors, with the exception of having a residual functional capacity for sedentary work, thus obviating all the exertional and postural restrictions attendant the housing liaison position."    (AR 255).    It is not entirely clear whether he found, therefore, that a sedentary RFC would automatically preclude any climbing whatsoever.    But see SSR 85-15.

working with clients, communicating, using her experience to make judgment decisions and dealing with administrative forms and procedures." (AR 255). He concluded that "based upon the claimant's residual functional capacity, the claimant could return to her past relevant work as a case aide as generally performed in the national economy." (AR 258).

However, his ultimate conclusion that Plaintiff could return to her past relevant work as generally performed is not based upon substantial evidence. Neither the ALJ nor Plaintiff's counsel asked the VE whether Plaintiff, with her limitations, could perform her past work as generally performed. The VE testimony only indicates that "some of these case aides do work more at a sedentary level." (AR 738). By "some" of these aides, it is unclear whether the VE is referring to the norm or to relatively unusual or job specific situations. It is also unclear what she means by "more at a sedentary level?" Does she mean that these case aides perform work at a sedentary level or at some level greater than sedentary but less than light, but closer to sedentary? Even assuming that the VE meant that these aides perform work at the sedentary level, this only underscores the conflict between her testimony and the DOT. While the DOT classification is not dispositive, on the other hand, "in order for an ALJ to accept vocational expert testimony that contradicts the Dictionary of Occupational Titles, the record must contain 'persuasive evidence to support the deviation.'" Pinto, 249 F.3d at 846, quoting Johnson, 60 F.3d at 1435. Here, the testimony is, at best, ambiguous and not sufficiently persuasive to overcome any presumptions concerning the light classification found in the DOT.

Accordingly, remand for further proceedings is required, and the/a vocational expert should again be called. Upon remand, the ALJ should reassess his step four determination. In order to make a proper assessment, the ALJ and Plaintiff should obtain more accurate information concerning the dates and duration of her employment as a case aide. This Court notes that Plaintiff's memory appears faulty, and she has provided varying and inconsistent dates of her employment. (AR at 60, 65, 99, 318, 729-30). Plaintiff's attorney pointed out that "there was never an earnings query done" to assist in clarifying the dates and duration of her employment, and the ALJ indicated that an earnings query would be obtained. (AR at 729). However, this appears not to have been done. The dates of employment may be critical in determining whether the job even can be considered past relevant work.

On the other hand, if the job does, in fact, qualify as past relevant work, there is no evaluation whatsoever as to whether, even with her limitation to sedentary work, Plaintiff could perform the job as performed on a part-time basis. SSR 96-8p, n.2. ("The ability to work 8 hours a day for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential evaluation process. Part-time work that was substantial gainful activity, performed within the past 15 years, and lasted long enough for the person to learn to do it constitutes past relevant work, and an individual who retains the RFC to perform such work must be found not disabled.").

In this connection, the ALJ's assessment of residual functional capacity and the physical requirements of plaintiff's past relevant work

is merely expressed in terms of exertional classifications—light, sedentary—and there is no actual function by function analysis. This practice is specifically discouraged by the Agency's own ruling which provides that "[a]t step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it." (Emphasis added). (SSR 96-8p). Upon remand, the ALJ should perform such a function by function analysis both of the RFC and of Plaintiff's past relevant work. Reed v. Massanari, 270 F.3d 838, 843 n.2 (9th Cir. 2001).

Next, in an undated Disability Report, probably completed as part of her second application, Plaintiff indicated that in addition to her past work as a mail carrier, in-home care-giver, scanner, and housing liaison assistant, she also worked as an assembler for an unspecified amount of time between 1992-1993. (AR 318). There is no inquiry whatsoever concerning this job. Further development is required concerning whether this job also constitutes past relevant work.

If plaintiff is ultimately found to be precluded from her past relevant work as performed, the ALJ should inquire whether Plaintiff is capable of her past relevant work as generally performed. See Winfrey, 92 F.3d at 1026. If there is a conflict between the DOT and the VE testimony, the ALJ should "obtain a reasonable explanation for the apparent conflict." SSR 00-4p. Ultimately, if the ALJ concludes that Plaintiff is incapable of performing her past relevant work, he must

14

then ask the VE if Plaintiff is able to do any other work.    <u>Tackett</u>,
180 F.3d at 1098-99.


### CONCLUSION


For the above reasons, and pursuant to sentence four of 42 U.S.C. § 405(g),[14] IT IS ORDERED that judgment be entered REVERSING and REMANDING the decision of the Commissioner for further administrative proceedings consistent with this decision.


IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on counsel for both parties.


DATED: October 27, 2006

_____
              SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[14]    This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."